J-A02004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TODD A. FRITZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLEY BRUCE-FRITZ | : | No. 867 WDA 2022 |

Appeal from the Order Entered July 21, 2022
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD 19-007010-007

BEFORE: BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.: **FILED: APRIL 3, 2023**

Todd A. Fritz ("Father") appeals from the order entered on July 21, 2022, in the Court of Common Pleas of Allegheny County, granting the petition for modification of the existing custody order filed by Kelley Bruce-Fritz ("Mother") with respect to the parties' sons, B.B.-F., born in April of 2008, and D.B.-F., born in July of 2011. After careful review, we affirm in part, vacate in part, and remand to the trial court.

The record reveals that Mother initiated a divorce and child custody action against Father on January 3, 2019, after he had relocated from the marital home in Glenshaw, Pennsylvania, to Gainesville, Florida. There is no dispute that Father moved to Florida prior to the parties' separation "to secure

---

[*] Retired Senior Judge assigned to the Superior Court.

new employment at the University of Florida 6th BDE Army ROTC and housing for the family. Mother and the children remained in Pittsburgh where there is a large extended family." Trial Court Opinion, 9/8/22, at 2 n.1. On January 14, 2019, Father filed a notice of proposed relocation requesting primary physical custody of B.B.-F. and D.B.-F. during the school year, commencing with the 2019-2020 school year. Mother filed a counter-affidavit, objecting to the relocation. By order dated September 23, 2019,[1] the court awarded Father primary physical custody during the school year and granted Mother partial physical custody every spring break, on alternating Thanksgiving and Christmas holidays, and up to seven days per month in Florida during the school year. Mother exercised primary physical custody during summer vacation. The parties shared legal custody.

Approximately one year later, Mother filed a petition to modify the existing custody order, wherein she requested primary physical custody of the children during the school year. Prior to filing the petition, Mother moved from the marital home in the Shaler Area School District to a residence in the Hampton Township School District in Pittsburgh. During the ensuing hearing, Mother testified and presented her father, Robert Bruce, who shares a close

_____

[1] The Honorable Susan Evashavik DiLucente issued the existing custody order. The Honorable Nicola Henry-Taylor presided over the subject proceedings and issued the order on appeal.

- 2 -

bond with B.B.-F. and D.B.-F. N.T., 6/24/22, at 7, 189. B.B.-F. and D.B.-F. refer to the maternal grandfather as "Pip." *Id*. at 195.

Father testified that he was then working as a "supply technician with the University of Florida Army ROTC and [as] a military reservist." N.T., 6/24/22, at 6. In addition, Father presented Eric Bernstein, Ph.D., the licensed psychologist who performed a child custody evaluation and submitted to the court a report dated December 11, 2021. Dr. Bernstein testified that Mother believes B.B.-F. and D.B.-F. "are emotionally suffering . . . separated from her. . . ." N.T., 6/27/22, at 258. In contrast, Father believes that B.B.-F. and D.B.-F. "are adjusted, healthy, and stable, [and] he is meeting their needs." *Id*. Dr. Bernstein stated that Mother "fulfills a more nurturing role, supporting the children's emotional health." *Id*. at 280. However, he did not recommend returning B.B.-F. and D.B.-F. to Pittsburgh because "they ha[ve] developed a life in Florida, even if they still to an extent have preference to be with their mother or, in [B.B.-F.'s] case, spend time with his grandfather and pursue a career in baseball." *Id*. at 274.

Father also presented the remote testimony of two family members who reside in Clarion County, Pennsylvania, and several witnesses from Florida, including Sarah Bundrick and Nayia Diaz, D.B.-F.'s fifth grade teacher and tutor, respectively.

The court conducted *in camera* interviews of B.B.-F. and D.B.-F. in the presence of the parties' counsel. As of the date of the hearing, both boys had

completed three academic years in Florida. In the fall of 2022, B.B.-F. would be in ninth grade and starting high school, and D.B.-F. would be in sixth grade and starting middle school. D.B.-F. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in 2021, for which he is prescribed medication. N.T., 6/27/22, at 430. D.B.-F. also has an Individualized Education Program ("IEP") involving occupational and speech therapy. N.T., 6/24/22, at 63. During D.B.-F.'s fifth grade year, he received tutoring twice per week. N.T., 6/27/22, at 428.

B.B.-F., then fourteen years old, testified that he "would prefer to come back to Pittsburgh" for the school year. N.T., 6/9/22, at 11, 20. He stated that he misses Mother and his maternal grandparents. *Id*. at 21. B.B.-F. testified that, approximately one year earlier, "I was doing something, and [Father] didn't like it, and he like punched me in the back of my head not too hard but not too lightly." *Id*. at 29.

The younger child's testimony was more equivocal. D.B.-F., then nearly eleven years old, testified:

Q. Is [Florida] where you want to stay?

A. Well, I do — I don't want to disappoint any of my parents.

Q. I know. You love them both, don't you?

A. Uh-huh.

Q. I know. Don't worry what they think right now. I just want to know what you think.

A. Well, probably stay here.

*Id*. at 63-64. D.B.-F. testified that he would feel "[h]appy and sad" if the court directed that he returns to Pittsburgh for the school year. *Id*. at 68.

The evidentiary record concluded with Mother testifying on rebuttal. The trial court then granted Mother's petition for modification and provided its rationale in open court. N.T., 6/27/22, at 559-582.

On July 21, 2022, the trial court granted Mother's petition and fully set forth the parties' custodial rights.[2] The order awarded Mother and Father shared legal custody; Father physical custody during B.B.-F.'s and D.B.-F.'s (1) winter and spring breaks; (2) the summer, and (3) "certain holidays" defined in the order; and Mother physical custody "during all other times." Order, 7/21/22, at ¶¶ III(2)(a)(i), (ii). In addition, the order awarded Mother and Father ten consecutive days of summer vacation with B.B.-F. and D.B.-F.

On August 2, 2022, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on September 8, 2022.

_____

[2] While the trial court entered a preliminary order on June 29, 2022, advising the parties of its decision to grant Mother's petition, that order did not dispose of the parties' claims as to legal custody or provide a final schedule of physical custody. In this vein, there is no dispute that the trial court intended the July 21, 2022 order to "constitute a complete resolution of the custody claims pending between the parties." *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa.Super. 1996).

On appeal, Father presents the following issues for review, which we re-ordered for ease of disposition.

1) Did the trial court err by weighing the custody factors as though the parties did not . . . already have a custody order in place, rather than considering the factors as a modification of a recently established custody order?

2) Did the trial court err in finding Mother met the burden necessary for relocation?

3) Did the trial court err by ignoring the prior findings of fact and orders of court?

4) Did the trial court err and abuse its discretion in making findings against Father for obtaining and following court orders to limit Mother's communications while supporting Mother's violation of the court orders?

5) Did the trial court err in reaching the conclusion that Mother was better suited to meet [B.B.-F.'s and D.B.-F.'s] educational, developmental and medical needs, when all evidence presented indicated otherwise?

6) Did the trial court err and abuse its discretion by concluding that Father was unable to provide the same level of academic support as Mother?

7) Did the trial court err and abuse its discretion by finding [B.B.-F. and D.B.-F.] would have better opportunities in Pittsburgh based on B.B.-F. being able to play travel baseball in Pittsburgh?

8) Did the trial court err in dismissing the evidence and testimony regarding maternal grandparents' efforts to turn [B.B.-F. and D.B.-F.] against Father and his family, and then err in entering findings against Father for having concerns that [B.B.-F. and D.B.-F.] would be in maternal grandparents' care?

9) Did the trial court err and abuse its discretion in finding Mother and maternal grandparents have greater logistical challenges seeing [B.B.-F. and D.B.-F.] in Florida?

10)  Did the trial court err and abuse its discretion in entering an extremely limited custody schedule for Father that is much more limited than either party proposed, and for failing to enter any findings on how he would preserve his bond with [B.B.-F. and D.B.-F.] under such a schedule?

Father's brief at 5-7 (cleaned up) (unnecessary capitalization omitted).

We review Father's issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . .  However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . .  Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child.  Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted).  The test is whether the evidence of record supports the trial court's

conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa.Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa.Super. 2014).

We have explained, "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion." ***King v. King***, 889 A.2d 630, 632 (Pa.Super. 2005) (cleaned up). Additionally, this Court has recognized that "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." ***Ketterer, supra*** at 540 (quoting ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

The primary concern in custody cases is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa.Super. 2006)(citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa.Super. 2004)).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, which requires the trial court to consider Mother's petition for modification under the following parameters.

Pursuant to § 5338(a), "[u]pon petition, a court may modify a custody order to serve the best interest of the child."  In this vein, the Act sets forth the following best-interest custody factors:

**§ 5328.  Factors to consider when awarding custody.**

   **(a)**  ***Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

   (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

   (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

   (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

   (3) The parental duties performed by each party on behalf of the child.

   (4) The need for stability and continuity in the child's education, family life and community life.

   (5) The availability of extended family.

   (6) The child's sibling relationships.

   (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

   (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

- 9 -

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

As the modification of physical custody would require the children to move from Florida to Pennsylvania, the trial court also considered the relevant § 5337(h) relocation factors,

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

- 10 -

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013)(citing *A.D. v. M.A.B.*,

989 A.2d 32, 35-36 (Pa.Super. 2010)). Further, we have explained that § 5323(d) of the Act "requires the trial court to set forth its mandatory assessment of the [. . .] factors prior to the deadline by which a litigant must file a notice of appeal." *A.V.*, 87 A.3d at 823 (citations omitted).

Instantly, the trial court ruled in favor of Mother's petition for modification and provided its reasoning on the record at the conclusion of the trial. N.T., 6/27/22, at 559-582. In addition, in its opinion accompanying the subject order, the court reiterated its assessment of the custody and relocation factors. The court weighed the following custody factors in Mother's favor: § 5328(a)(1), (2), (5), (7), (9), (10), and (12). It found that (a)(4) militated in Father's favor, and the remaining factors were either neutral or inapplicable. *See* Trial Court Opinion, 7/21/22, at 1-15.

As to the concomitant relocation factors, the court determined that § 5337(h)(1), (2), (3), (4), (7), and (9) weighed in Mother's favor. None favored Father. Factor eight was neutral and factors six and ten were inapplicable. *See id*. at 15-20.

Critical to its determination were the undisputed facts that B.B.-F. prefers to return to Pittsburgh for his transition to high school, Mother provides "greater support to [B.B.-F.'s and D.B.-F.'s] emotional health," and B.B.-F.'s and D.B.-F.'s maternal and paternal relatives reside in the Pittsburgh area, particularly their maternal grandfather, with whom they share a close relationship. *Id*. at 11-12.

- 12 -

In his first issue, Father assails the trial court for not placing the burden of proof with Mother. Father asserts that the court erred insofar as it "weighed the factors as though there was no custody order in place, putting each party on equal footing." Father's brief at 20. He argues that, had the court placed the burden of proof with Mother, it would have given determinative weight to B.B.-F.'s and D.B.-F.'s stability in Florida. We discern no error.

Under the Act, custody orders are always subject to modification. **See** 23 Pa.C.S. § 5338(a) (permitting modification of a custody order upon petition "to serve the best interest of the child"). The Act altered the analysis for both custody and relocation matters by requiring trial courts to consider and weigh all the statutory relocation and best interest factors. **S.J.S. v. M.J.S.**, 76 A.3d 541, 548 (Pa.Super. 2013). With respect to primary physical custody, the Act provides, "In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent." **See** 23 Pa.C.S. § 5327(a).

Father cites **M.J.S. v. B.B.**, 172 A.3d 651 (Pa.Super. 2017), for the principle that "[o]nce a custody order has been established, the burden of production and persuasion falls to the party seeking modification." Father's brief at 21. Father's reliance on **M.J.S.** is misplaced for two reasons. First, there was no pre-existing custody order in **M.J.S.** Thus, neither party was seeking a modification of an existing order. More importantly, **M.J.S.** did not invalidate the statutory principle espoused in § 5327(a) that no presumption

exists between parents in cases concerning primary physical custody. In actuality, the **M.J.S.** Court reversed the trial court order granting a grandmother primary physical custody because the court erred in: (1) failing to apply the evidentiary presumption favoring father over a **third party** pursuant to § 5327(b); and (2) improperly placing the burden of proof with the father. **Id**. at 660. Thus, contrary to Father's assertion, **M.J.S.** did not hold that the burden of proof falls to the party seeking modification in an action between two parents.

Pursuant to § 5327(a), Mother and Father had an equal burden to demonstrate B.B.-F.'s and D.B.-F.'s best interests under § 5328(a). As discussed *infra*, the trial court considered all the relevant factors and based its decision on that analysis. Father's first issue fails.

In the alternative, Father asserts in his second issue that Mother's move to a new school district triggered the § 5337 relocation provisions, which places the burden of proof with the party proposing the relocation. **See** 23 Pa.C.S. § 5337(i)(1). Further, Father baldly asserts that the court erred in evaluating the § 5337(h) relocation factors secondary to the § 5328(a) custody factors.[3] We disagree.

_____

[3] In support of his argument, Father inappropriately cites to **C.W. v. T.J.T.**, 178 A.3d 174 (Pa. Super. 2017), an unpublished memorandum that was filed prior to May 1, 2019, the effective date of Pa.R.A.P. 126(b). Accordingly, Father cannot rely upon that decision.

First, Mother is not encumbered with the burden of proof because she did not propose a "relocation," which the Act defines as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S. § 5322. This Court has stated, "Under this definition, while relocation is in part defined by a change in residence of the child, it is evident that a relocation as contemplated in the statute requires a negative custodial impact on a 'nonrelocating party.'" **D.K. v. S.P.K.**, 102 A.3d 467, 472 (Pa.Super. 2014). We conclude that Mother's move from the Shaler Area School District to the Hampton Township School District is insignificant to Father's exercise of custody in this case where he resides in Florida and Mother remains in the Pittsburgh area. Stated plainly, pursuant to **D.K.**, § 5337 was not *per se* triggered in this case both because the custodial parent is not seeking to relocate and because Mother's move to the Hampton Township School District will not impact Father's custodial rights any more than her former residence in the Shaler Area School District. Thus, once again, Father's attempt to shift the burden of proof is unavailing.

However, the relocation factors outlined in § 5337(c) were nevertheless relevant to the trial court's best-interest determination. In **D.K.**, **supra**, this Court explained:

> [I]n a case such as this, which involves a custody determination where neither [parent] is relocating and only the children stand to move to a significantly distant location, the relocation provisions of the Child Custody Act, 23 Pa.C.S.A. § 5337, are not *per se* triggered and the notice requirement of section 5337(c) does not apply. However, in such cases, the trial court shall consider

- 15 -

the relevant factors set forth in section 5337(h) insofar as they impact the final determination of the best interests of the children.

*Id*. at 468. Further, we recognized, "Several of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a). Trial courts should also consider those relevant factors of section 5337(h) that are not otherwise encompassed directly or implicitly by the section 5328(a) factors pursuant to the catchall provision of section 5328(a)(16)." *Id*. at 476-477.

Hence, as explained in *D.K.*, because B.B.-F. and D.B.-F. stood to move a significant distance from Florida if the court granted Mother's request for primary physical custody, the trial court properly considered the relevant § 5337(h) relocation factors in determining B.B.-F.'s and D.B.-F.'s best interests even though the procedural aspects of the section were never triggered. *D.K.*, *supra* at 476-477. Therefore, this component of Father's second argument also fails.

Father's third and fourth assertions are that the trial court erred by ignoring the provision in the existing custody order concerning telephone communication with B.B.-F. and D.B.-F. while in the other party's custody. Essentially, Father complied with the 2019 order permitting him to limit the frequency, duration, and timing of Mother's calls to the children when they

- 16 -

were in his care.[4] Father contends that the court erred in weighing his compliance with the order against him. These issues implicate § 5328(a)(1), concerning which party is more likely to encourage and permit frequent and continuing contact between the children and another party. As noted *supra*, the court found that this factor militated in Mother's favor.

Father testified that when B.B.-F. and D.B.-F. first moved to Florida in 2019, their telephone calls with Mother "were a major problem." N.T., 6/27/22, at 390. He stated, "The [calls] would occur as soon as the boys came back from school, before school started, and they would be on the phones all the way up to dinner time. And then I'd have to try and get them off for dinner . . . for showers . . . and [for] just getting the bookbags in order for the next day of school." *Id*. The trial court acknowledged that the matter "became litigious and [o]rders of [c]ourt were issued restricting Mother's contact with" B.B.-F. and D.B.-F. Trial Court Opinion, 9/8/22, at 5. It is important to note that Father acknowledged on direct examination that **he took steps beyond the existing court order** to limit telephone communication in 2020 "when Covid started, because it was getting really bad and out of control." N.T., 6/27/22, at 392. Specifically, Father testified that B.B.-F. communicated frequently with the maternal grandfather, who resided

_____

[4] The pertinent provision provided that "phone calls between Mother and the children shall be limited to once per day. Mother shall initiate the call, between 7:30-8:30 p.m. each night, and the calls shall be limited to thirty (30) minutes." Order, 9/11/19.

in Pittsburgh with the maternal grandmother, using applications on his mobile phone, which had been provided by the maternal grandmother and paid for under her phone plan. *Id*. at 393-396; N.T., 6/24/22, at 36-37. Father confiscated the phone and shipped it back to maternal grandparents. *Id*. at 396.

Although Father testified that the level of communication with Mother and the maternal grandparents had a negative effect on B.B.-F.'s and D.B.-F.'s transition to Florida and relationship with him, the trial court made credibility determinations in favor of Mother being the party to permit more frequent and continuing contact under § 2511(a)(1). Mother testified that she "waited for [B.B.-F. and D.B.-F.] to contact me" by telephone, and when they did, "it was very helpful" to their transition. N.T., 6/24/22, at 39-40. Mother testified that the move to Florida in 2019 "was a very hard, emotional adjustment" for B.B.-F. and D.B.-F. *Id*. Mother also testified that Father did not provide privacy to B.B.-F. and D.B.-F. during their telephone conversations with her. *Id*. at 45-46. In contrast, she explained that she would allow unrestricted and private telephone communication between B.B.-F., D.B.-F., and Father. *Id*. at 47-50.

We are not persuaded that the court ignored the telephone communication provision under the existing custody order or that it

invalidated the prior finding that the restrictions were warranted.[5] Rather, the court determined that Father's strict compliance with the order was evidence that he "did not understand how limiting contact, which he considered interruptions, with Mother, and maternal side of the family is harmful to" B.B.-F. and D.B.-F. Trial Court Opinion, 9/8/22, at 5. There is ample evidence to support the trial court's findings under § 2511(a)(1) in this regard.

Father also asserts that the trial court erred by ignoring provisions in the existing custody order concerning the directive to enroll B.B.-F. and D.B.-F. in individual counseling to facilitate their adjustment to the relocation.[6] Father's brief at 18. This argument implicates § 5328(a)(10), concerning which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the children. The court

_____

[5] Father's attempt to invoke aspects of the concurrent jurisdiction rule and collateral estoppel are unpersuasive. As discussed in the body of this memorandum, the trial court did not purport to overturn the prior court's finding that the telephone restrictions were warranted when they were imposed in 2019. Rather, the court determined that Father's continued over-enforcement of those restrictions was relevant evidence that Father was presently less likely than Mother to encourage frequent and continuing contact. Nothing in that determination implicates the coordinate jurisdiction rule.

[6] The existing custody order provided:

> 10. Father shall enroll both children in individual counseling to facilitate their adjustment to the relocation. The term of the counseling and frequency of the sessions shall be directed by the counselor. Parties shall cooperate and follow all recommendations of the counselor.

Order, 9/23/19, at ¶ 10.

- 19 -

found that the factor "slightly favors" Mother. Trial Court Opinion, 7/21/22, at 12.

As stated by the trial court, "Father has made legal custody decisions without including Mother. For example, Father seemingly disobeyed an order of court when he selected a therapist for [B.B.-F. and D.B.-F.] without consulting Mother beforehand." *Id*. at 13. The record supports the trial court's finding insofar as Mother testified that Father excluded her from the selection of B.B.-F.'s and D.B.-F.'s therapist contrary to the award of shared legal custody. N.T., 6/24/22, at 72-80. Moreover, even if the court abused its discretion in this finding of fact, which it did not, the determination was trivial considering the slight weight the court placed on § 5328(a)(10). *See* Trial Court Opinion, 7/21/22, at 12-13.

Father's fifth issue also relates to this factor. He asserts that the trial court abused its discretion in weighing § 5328(a)(10) "slightly" in Mother's favor. The trial court found:

> Mother has demonstrated a slightly stronger ability to care for [B.B.-F.'s and D.B.-F.'s] emotional and developmental needs, and particularly for D.B.-F.'s special needs resulting from his ADHD diagnosis. For instance, when D.B.-F.'s appetite decreased and he lost significant weight because of his prescribed medication, Mother decided to administer his medication at bedtime, which has worked well and not impacted the medication's efficacy. Mother is diligent in connecting [B.B.-F. and D.B.-F.] with therapist and tutors. . . .

Trial Court Opinion, 7/21/22, at 12; *see also* N.T., 6/24/22, at 66-80.

Mother's testimony supports the court's findings regarding the administration of D.B.-F.'s medication at bedtime, which has not impacted its efficacy during the summer while D.B.-F. was residing in her primary physical custody. *See* N.T., 6/24/22, at 66-80. Mother testified that, in general, she is concerned about the side effects of the medication, and, if she was awarded primary physical custody, she would intend to take D.B.-F. "to his long-time pediatrician that he's had here since he was born and . . . for [Father] and I to have him evaluated and to take it from there." *Id*. at 69. In addition, Mother's testimony supports the court's findings regarding her diligence in supporting B.B.-F.'s and D.B.-F.'s needs for a therapist and D.B.-F. for a tutor. *See id*. at 72-80. With respect to D.B.-F.'s academic needs, Mother testified that she advised Father that they obtain a tutor for him during the 2019-2020 school year, but Father failed to do so until he and Mother received notice from D.B.-F.'s school stating that he "was potentially failing third grade." *Id*. at 59-60. Accordingly, we discern no abuse of discretion with respect to the court's consideration of § 5328(a)(10).

Next, Father asserts that the trial court abused its discretion in concluding that he was unable to provide the same level of academic support as Mother. This challenge implicates the court's finding under § 5328(a)(4), which it weighed in Father's favor. In so doing, the court credited Dr. Bernstein's testimony that "Father has done well to ensure that [B.B.-F. and D.B.-F.] have begun to establish academic and social lives in Florida."

Trial Court Opinion, 7/21/22, at 6. The court recognized that B.B.-F. "earned straight 'A's' on his last report card;" D.B.-F. "has actively participated in and received recommended tutoring and IEP for occupational and speech therapy;" and that Father assists D.B.-F. with homework as needed.[7] *Id*.

However, the impact of the court's finding was reduced by the contemporaneous finding with respect to § 5337(h)(7), which addressed whether the relocation would enhance the general quality of life for the children, including educational opportunities. The court found that Father "cannot provide the same level of academic support" as Mother. *Id*. at 19. It based this finding on Mother's testimony that she recognized D.B.-F.'s need for a tutor before his school recommended one, and she "has supplemented D.B.-F.'s reading assignments with books of special interest to D.B.-F." *Id*. The testimony of Mother and Ms. Bundrick, D.B.-F.'s fifth grade teacher, supports the court's findings, and its conclusion in favor of Mother in this regard is reasonable. *See* N.T., 6/24/22, at 59-60, 62-63; N.T., 6/27/22, at 339.

Insofar as Father challenges the limited weight the court placed on § 5328(a)(4), no relief is due. It is beyond cavil that this Court defers to the trial court on matters of credibility and weight of the evidence. *See A.V.*,

---

[7] Similarly, while Father asserts that the trial court blamed him for erecting barriers in a manner that implicated § 5328(a)(4), we reiterate that the court found that § 5328(a)(4) militated in Father's favor. Thus, this argument also fails.

*supra* at 820. Furthermore, to the extent Father contends that the trial court's findings contradicted those of the prior court that issued the existing custody order in 2019, his claim is also without merit. As we previously observed, custody orders are always subject to modification based on the enduring interests of the children. *See* 23 Pa.C.S. § 5338(a). Instantly, the trial court carefully considered the evidence presented by the parties during the modification hearing. We discern no abuse of discretion.

In his seventh issue, Father argues that the trial court abused its discretion in finding that B.B.-F. had better opportunities to play travel baseball in Pittsburgh than in Florida. With respect to § 5328(a)(7), concerning the well-reasoned preferences of the children, the trial court found, in part:

> Among his reasons for desiring to return to Pittsburgh during the school year, B.B.-F. expressed eagerness to play travel baseball in Pittsburgh, to reunite with friends in the area, and to spend greater time with Mother and [the m]aternal [g]randparents. . . . Baseball is clearly very important to B.B.- F. and it is a sport he intends to pursue at a high level. B.B.-F. testified that, in addition to high school baseball, he looked forward to playing for a travel team in Pittsburgh if he were to return to the area. Since residing with Father in Florida, B.B.-F. has not been enrolled in travel baseball. . . .

Trial Court Opinion, 7/21/22, at 9.

Father asserts that the evidence does not support the court's findings because Mother testified on cross-examination that she did not know whether B.B.-F. would be able to play on a travel baseball team if the court awarded her primary physical custody during the school year. The record supports this

assertion. *See* N.T., 6/24/22, at 109-112. However, the trial court merely found that B.B.-F. believed he would play on a travel baseball team if he returned to Pittsburgh, and this was one of at least three reasons that he preferred to return to Mother's primary physical custody during the school year. N.T., 6/9/22, at 23-24.

To the extent that the court considered B.B.-F.'s desire to play baseball in Pittsburgh, it did not abuse its discretion. The certified record supports B.B.-F.'s preference to return to Pittsburgh to pursue baseball, a passion that he shares with maternal grandfather. N.T., 6/24/22, at 190. Mother testified that the maternal grandfather was "scouted by the Milwaukee Brewers years ago." *Id*. at 27. In addition, Dr. Bernstein testified on cross-examination that B.B.-F. "truly supports returning to the area where he has family and opportunities for baseball." N.T., 6/27/22, at 276. Dr. Bernstein continued:

> Q. And isn't it possible that some of [B.B.-F.]'s desire to play baseball in Pittsburgh has to do with all the support in Pittsburgh that he gets from his family being around to support him in playing baseball? Is that possible?
>
> A. I would presume that that is a benefit of him playing sports, as it is oftentimes an important aspect for children to have those whom they love provide support and validation for their hard work and fun in play[ing]. So I would assume it is interrelated.
>
> Q. I'll direct you to page 10 of your report, the fourth paragraph from the bottom, the last sentence.
>
> . . . .
>
> Q. [B.B.-F.] said during his first interview, and that was I believe the interview where his father brought him, he said his father does

not support his travel play nor have time to facilitate his participation.

A. I see that.

*Id*. at 278-279. As such, the record supports the trial court's consideration of B.B.-F.'s preference to return to Mother's primary physical custody during the school year, in part, to play baseball in Pittsburgh.

In his eighth issue, Father argues that the court abused its discretion in dismissing his allegations that the maternal grandparents attempted to alienate him from the children. Father focuses on a specific footnote in the court's discussion of § 5328(a)(12), regarding each party's availability to care for the children or ability to make appropriate childcare arrangements. The footnote in question observed that "Father exhibited disdain, distress, and dislike for [the maternal g]randparents, particularly 'maternal [g]randfather/Pip' which has affected his ability to put [B.B.-F.'s and D.B.-F.'s] best interests first." Father's brief at 51 (citing Trial Court Opinion, 7/21/22, at 13, n.4).

The court found that, in this case, § 5328(a)(12) related to (a)(5), concerning the availability of extended family, both of which it weighed in Mother's favor. The court noted:

Because Father's extended family does not reside in Florida, Father relies on child-care arrangements from a young-adult babysitter and academic tutoring from a tutor, Nayia Diaz. While these arrangements are adequate to meet [B.B.-F.'s and D.B.-F.'s] needs, the [c]ourt finds that [B.B.-F. and D.B.-F.] would receive superior care from [B.B.-F.'s and D.B.F.'s] extended family. Father testified that he believes it is preferable for a young

- 25 -

adult babysitter to care for [B.B.-F. and D.B.-F.] as opposed to [m]aternal [g]randparents.

Trial Court Opinion, 7/21/22, at 13.

We do not find an abuse of discretion with respect to the court's conclusion that it is preferable for the maternal grandparents to provide care to B.B.-F. and D.B.-F. Concerning Father's testimony that his relationship with the maternal grandfather is "not so good," and that the maternal grandfather would "bad-mouth [the paternal grandparents] and myself" to B.B.-F., we will not disturb the trial court's determinations on the credibility of Father and the maternal grandfather and the weight of the evidence in this regard. N.T., 6/27/22, at 396, 398; **see A.V.**, **supra** at 820 (this Court defers to trial court on matters of credibility and weight of evidence).

Father frames his final issues as objections to the trial court's consideration of factors relating to the relative logistics of exercising periods of partial custody in Florida and Pennsylvania. He complains that the court committed an abuse of discretion in finding that his "familial ties to Pittsburgh present lesser logistical challenges" to him visiting B.B.-F. and D.B.-F. than Mother visiting the children in Florida. Father's brief at 35. Insofar as the certified record supports the trial court's determination of the parties' relative hardships of exercising physical custody out of state in light of the considerable testimony regarding Father's extended family in the Pittsburgh area, we do not disturb it.

However, the crux of Father's actual complaint is that the award of partial physical custody scheduled during the school year is deficient considering his ability to exercise physical custody in Pennsylvania without disturbing the children's school calendar. *Id*. at 35 ("However, the trial court then simultaneously provided Father with no custody time with the children during the school year other than a few days during Christmas and Spring Break, and alternating Thanksgiving"). Father observes that Mother proposed that he exercise custody in Pennsylvania up to seven days every calendar month during the school year, which is what she exercised in Florida under the existing custody order. *Id*. at 36, 46. Nevertheless, the court restricted Father's physical custody during the academic year to certain school breaks and holidays. Father argues that this portion of the custody schedule is deficient and impairs his ability to maintain his relationships with B.B.-F. and D.B.-F. *Id*. at 47-48. We agree with this aspect of Father's argument.

Father's partial physical custody schedule is unreasonable in view of the court's findings that Father has "lesser logistical challenges" to visiting B.B.-F. and D.B.-F. in Pittsburgh. Indeed, there is no record evidence that Father would have significant logistical challenges in exercising custody in Pittsburgh during the school year as Mother proposed. Thus, considering that the certified record demonstrates that Father can exercise physical custody in the Pittsburgh area while the children are in school, we conclude that the trial court abused its discretion in failing to fashion a custody schedule that

preserves Father's relationship with B.B.-F. and D.B.-F. during the academic year.

Accordingly, although we do not disturb the trial court's award of primary physical custody to Mother, we vacate the custody order with respect to Father's schedule of partial physical custody and remand for the trial court to formulate a custody arrangement suitable for Father to preserve his relationship with B.B.-F. and D.B.-F. during the academic year. We affirm the order in all other respects.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/3/2023